734 So.2d 43 (1999)
STATE of Louisiana
v.
Louis ALEXANDER.
No. 98-KA-993.
Court of Appeal of Louisiana, Fifth Circuit.
March 10, 1999.
*44 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant District Attorney, 24th Judicial District, Parish of Jefferson, Gretna, Louisiana, Attorneys for Plaintiff/Appellee.
Sandra C. Jenkins, Louisiana Appellate Project, New Orleans, Louisiana, Attorney for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS and SUSAN M. CHEHARDY.
GOTHARD, Judge.
Defendant, Louis Alexander, was charged by bill of information with seven counts of armed robbery in violation of LSA-R.S. 14:64 stemming from armed robberies of businesses on the West Bank. At his arraignment, he entered a plea of not guilty and was subsequently tried before a twelve person jury, which returned verdicts of guilty on counts one, two, four, six and seven. The jury found the defendant not guilty on count three and was unable to reach a verdict on count five. As a result of the convictions, the defendant was sentenced to serve fifty years on each count without benefit of parole, probation or suspension of sentence. The sentences were made consecutive. A defense motion to reconsider sentence was denied and a motion for appeal was granted.
The record shows that an investigation of several armed robberies of businesses on Behrman Highway during the summer months of 1997 lead to the arrest of defendant, Louis Alexander. In the course of the investigation, detectives conducted a search of the defendant's father's home, with his consent. Several articles of clothing belonging to defendant were taken in the search. No weapons were found. While in police custody, defendant made a statement in which he admitted two of the robberies.
In brief to this court, defendant assigns two errors. In the first assignment he asserts there is insufficient evidence to prove his guilt on counts four, six and seven. Specifically, defendant cites the inability of the victims to positively identify him from a photographic line-up and the failure of the state to introduce any physical evidence such as fingerprints to connect him to the crimes. The state argues that the evidence contained in the record, both direct and circumstantial, is legally sufficient to convict the defendant of the crimes charged.
The standard for testing the sufficiency of evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Hawkins, 96-0766 (La.1/14/97), 688 So.2d 473, 479. *45 When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence". The requirement of LSA-R.S. 15:438 does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984). Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Guccione, 96-1049 (La.App. 5 Cir. 4/29/97), 694 So.2d 1060; writ denied, 97-2151 (La.3/13/98), 712 So.2d 869.
Proof of armed robbery pursuant to LSA-R.S. 14.64 requires a showing that the defendant took something of value from another while armed with a dangerous weapon. Encompassed in proving the elements of armed robbery is the necessity of proving the identity of the defendant as the perpetrator and when the key issue in the case is identification, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1054.
The facts of the three contested convictions are as follows[1]. In count four defendant was charged with the armed robbery of Catherine Rhoto on August 25, 1997. On that date Ms. Rhoto was working as a cashier at the Super B Convenience Store on Behrman Highway. At about 5:30 p.m., a customer who was last in line placed a soda on the counter. He paid for the drink with a ten dollar bill and inquired about the price of a cigar. As Ms. Rhoto told him the price of the cigar, the man leaned over the counter, grabbed Ms. Rhoto's blouse and said, "this is a hold up, I'm going to rob you and I have a gun". At that point the man lifted his shirt to reveal the butt of a gun tucked in the waistband of his shorts. The man told Ms. Rhoto not to do or say anything or he would shoot her. The robber ordered Ms. Rhoto to give him the money from the cash register and her purse, and then told her to lie on the floor. Ms. Rhoto did as she was told until the robber left. Then she called police. Ms. Rhoto identified defendant as the robber in a photo lineup, and at trial. She testified that the robbery lasted about four minutes and that she looked at the robber's face, even though he told her not to, because she wanted to be able to identify him. She was positive in her identification of the defendant, and stated that she would remember the robber's face "till the day I die". Ms. Rhoto also testified that the robber had a scar or blemish on his face, and that he was not wearing anything to hide his face. She described his attire as a lime green, or bright green polo type shirt and shorts. The same sort of garments were seized in a search of the defendant's father's home.
The basis of count six is a robbery of a Texaco gas station on Berhman Highway at about 8:30 p.m. on August 28, 1997. In that robbery a man entered the store and walked up behind the clerk on duty, Crystal Johnson. The man put a gun to Ms. Johnson's back and ordered her to turn around and open the cash register. The robber became impatient when Ms. Johnson began entering a code to open the register. He said "b_____h, I said open the f_____g register". The robber took money from the register and asked her if she had any money. When she pulled out her pockets to show that she had no money, the man ran out of the store. Ms. Johnson called police. At trial Ms. Johnson testified that she did not get a good look at the robber, but did notice that he had a tear *46 shaped tattoo under his eye. The defendant has a similar tattoo.
Also admitted into evidence in connection with this count is the sworn statement of the defendant in which he admits to this robbery. In his statement the defendant stated that he walked into the gas station and pulled out a water gun which looks real in the dark and told the female employee to give him the money out of the cash register. She complied and defendant left.
The robbery which constitutes count seven occurred on September 7, 1997. On that night the Super B Convenience Store was robbed for a second time. Cathy Krummel, the cashier, was assisting a customer when she saw a black man walk though the parking lot. When the customer left, the man entered the store and asked for change of a one dollar bill. As Ms. Krummel opened the cash register, the man walked around the counter and put a black gun in her face. The man ordered her not to look at him and to give him the money. Ms. Krummel gave the man the money from the register, but continued to look at him. While Ms. Krummel was unable to make a positive identification from the photo line-up, she did make a positive identification of the defendant at trial.
As to this count, the state also introduced into evidence a copy of video surveillance tape and some photographs taken from the tape which were viewed by the jury. There were some discrepancies between the description of the attire worn by the robber given by Ms. Krummel, and the video tape of the robber. However, defendant's father positively identified the robber caught on tape as his son. Further, as previously stated, Ms. Krummel positively identified defendant at trial.
Given the evidence presented by the state on the above counts, we find the evidence sufficient to convict defendant on all contested counts. Accordingly, we find no merit in these assignments.
In the second assignment defendant argues his sentence is excessive because the trial judge did not sufficiently articulate reasons to support the sentence, because the record does not reflect that he had prior felony convictions, and because no one was injured during the robberies. The state responds that the record reflects that the defendant had a propensity for violent behavior and the record supports the sentences imposed.
The record reflects that the defendant filed a timely motion to reconsider sentence as required by LSA-C.Cr.P. art. 881.1. In the motion, the defendant contended that the sentences were excessive on constitutional grounds and because the trial judge failed to consider mitigating circumstances.
Both the Eighth Amendment to the United States Constitution and Article I § 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. A sentence is generally considered to be excessive if it is grossly disproportionate to the offense or imposes needless pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Daigle, 96-782 (La.App. 5 Cir. 1/28/97), 688 So.2d 158, 159, writ denied, 97-0597 (La.9/5/97), 700 So.2d 506.
In reviewing a sentence for excessiveness, the appellate court must consider the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Daigle, supra; State v. Jackson, 597 So.2d 1188 (La.App. 5 Cir. 1992). The trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Daigle, supra; LSA-C.Cr.P. art. 881.4(D).
In the present case, defendant was convicted of five counts of armed robbery, violations of LSA-R.S. 14:64. According to paragraph B of that statute, armed robbery is punishable by imprisonment at *47 hard labor for not less than five years and not more than ninety-nine years, without benefit of parole, probation or suspension of sentence. Before the defendant was sentenced on April 30, 1998, the record reflects that the state introduced copies of certified convictions showing that on July 22, 1991, the defendant pled guilty to illegal possession of stolen things valued at $500.00 or more and that on May 3, 1994 the defendant pled guilty to armed robbery. After denying the defendant's post-trial motions, the trial court sentenced the defendant to five consecutive terms of fifty years imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The trial judge stated that in sentencing the defendant, he had taken into account all of the circumstances surrounding the crimes, the sentencing guidelines, the defendant's prior convictions, and the defendant's age. The judge further stated that any lesser sentence would deprecate the seriousness of the offenses.
Based on the evidence in the record, we do not find that defendant's sentence is excessive. First, prior criminal activity is one of the factors to be considered by the trial judge in sentencing a defendant. Prior criminal activity is not limited to convictions. State v. Washington, 414 So.2d 313, 315 (La.1982). Here, the record reflects that defendant has a criminal history commencing at a relatively early age. According to the commitment, the defendant was twenty-five years old at the time of sentencing. He had a 1991 conviction for possession of stolen things valued at over $500.00 and a 1994 conviction for armed robbery. According to the defendant's father's taped statement introduced at trial, the defendant had just been released from prison in May, 1997. Thus, the defendant had only been out of prison for two months when he began the spree of armed robberies in August which resulted in the instant five armed robbery convictions.
The record reflects that all of the victims were frightened for their lives during the armed robberies. In one of the robberies, the defendant actually injured one of the victims, Ms. Rhoto, when he grabbed her blouse and scratched her chest. A photograph showing this injury was admitted into evidence.
It is well settled that a sentence should not be set aside absent manifest abuse of discretion. State v. Frank, 94-923 (La.App. 5 Cir. 3/1/95), 652 So.2d 121, 123. In the present case, the trial judge could have imposed the maximum sentence of ninety-nine years for each conviction, but did not do so. Rather, the sentences the judge imposed were not only within the statutory limits but were, in fact, approximately one half of the maximum term of imprisonment that could have been imposed. Moreover, the trial judge was authorized under LSA-C.Cr.P. 883 to impose consecutive sentences because convictions arose out of separate transactions.[2] Based on the foregoing, these sentences do not constitute a manifest abuse of the trial judge's discretion, and will not be set aside. State v. Daigle, supra; LSA-C.Cr.P. art. 881.4(D).
However, in our review of the record for errors patent we note that the trial court failed to observe the twenty-four hour period between denial of a defense motion for new trial and sentencing of the defendant as required by LSA-C.Cr.P. article 873. It is clear from the record that the defendant did not waive that delay. In *48 fact, the defendant requested a delay in sentencing.
Absent a showing that prejudice resulted from the failure to afford the statutory delay, reversal of a prematurely imposed sentence is not required. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, 380, cert. denied, U.S., 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); State v. White, 404 So.2d 1202 (La.1981).
When a defendant does not waive the delay afforded in article 873, and does not challenge the penalty imposed, the error may be harmless. White, supra. However, a different result is reached when the delay is not observed and a defendant challenges his sentence. In State v. Augustine, 555 So.2d 1331 (La.1990), a defendant contended that his forty-year sentence for an armed robbery conviction was excessive and also asserted that the trial judge failed to observe the delay in article 873. The Louisiana Supreme Court held that the trial court's failure to observe the delay provisions was not harmless, even though defendant's sentence was not unconstitutionally excessive. Accordingly, we vacate the sentence and remand the matter to the trial court for re-sentencing. See; State v. Reyes, 98-424, (La.App. 5 Cir. 12/29/98), 726 So.2d 84; State v. Bowers, 97-1029 (La.App. 5 Cir. 5/27/98), 712 So.2d 302; State v. Avila, 563 So.2d 990 (La.App. 5 Cir.1990).
For the foregoing reasons, we affirm the defendant's convictions, vacate the sentences and remand the matter for re-sentencing.
CONVICTIONS AFFIRMED; SENTENCES VACATED; MATTER REMANDED.
NOTES
[1] The other two convictions were similar in circumstances. However, since they are not contested by defendant in his argument regarding sufficiency, we will not include the facts of those counts.
[2] Article 883 provides as follows:

Concurrent and consecutive sentences
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.