746 So.2d 58 (1999)
STATE of Louisiana
v.
Brandon WATTS.
No. 99-KA-311.
Court of Appeal of Louisiana, Fifth Circuit.
August 31, 1999.
*60 Bruce G. Whittaker, Gretna, Louisiana, Attorney for Defendant/Appellant.
Brandon Watts, Angie, Louisiana, in proper person.
Paul D. Connick, Jr., District Attorney, Terry Boudreaux, Assistant District Attorney, Gretna, Louisiana, Attorneys for Plaintiff/Appellee.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and SUSAN M. CHEHARDY.
DALEY, Judge.
Defendant, Brandon Watts, appeals his conviction of armed robbery, a violation of LSA-R.S. 14:64. He was found guilty as charged by a jury of twelve and thereafter, was sentenced to twenty-five years at hard labor without benefit of probation, parole, or suspension of sentence, with credit for time served.
On appeal, defense counsel filed a brief in conformity with State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241[1] and Anders v. California.[2] The defendant's appellate counsel has also filed a Motion to Withdraw as Counsel of Record. On May 11, 1999, the defendant filed a Pro Se Supplemental Brief alleging three assignments of error. After thorough review of the record and law, we affirm defendant's conviction and sentence.

FACTS
At approximately 5:45 p.m. on November 3, 1997, Officers Uzee and Chaplan of the Jefferson Parish Sheriff's Office were dispatched to investigate an armed robbery that occurred outside Badeaux's Superette on Ames Boulevard in Marrero. They went to the home of the victim, Ms. Shahetra Glen, who gave them a brief description of the perpetrator that the officers broadcasted over the police radio. Ms. Glen said that she had just cashed a money order inside the store for one hundred and thirty-three ($133.00) dollars. She exited the store while counting her money. Moments later she noticed a person she had seen in the store following her. As she was walking back to her residence she was robbed at gun point by the man who had followed her from the store. She thought that the employees of Badeaux's Superette might have seen the armed robber or the perpetrator.
Officer Uzee then went to Badeaux's Superette and spoke with Kirk Badeaux, one of the owners of the store. Mr. Badeaux said that an individual named Brandon fit the victim's description of the perpetrator.
At approximately 6:00 p.m., other officers stopped the defendant at 1100 Ames Boulevard because his appearance matched the broadcast description. The police transported the defendant to Ms. Glen's house to see if she could identify him, which she did. Thereafter, the police arrested the defendant for armed robbery. When he was booked at the jail, the defendant was carrying one hundred and three ($103.00) dollars.
The defendant testified on his own behalf. He denied that he had ever held a gun. He claimed that he had never seen the victim before. The defendant admitted that he had gone into Badeaux's Superette at approximately 12:00 p.m. on November 3, 1997 to get some lunch. The defendant also claimed that he only had *61 eighty-three ($83.00) dollars, not one hundred and three ($103.00) dollars, when he was arrested.
Ms. Alma Lewis, the defendant's mother, testified that at 6:25 p.m. on November 3, she and her son left her house and began walking to the Best Stop, but that the police arrested the defendant before they reached the store. Ms. Lewis said that she and the defendant were inside her house all day, and that the defendant did not go to school because he was sick. She admitted that she sent the defendant to Badeaux's Superette at approximately 12:00 p.m. to buy some lunch. Ms. Lewis also testified that she knew the defendant only had eighty-three ($83.00) dollars on November 3, 1997, because she had given it to him.
A first jury trial was held on August 27, 1998, which was declared a mistrial after the jurors could not agree upon a verdict. A second jury trial was held on November 19, 1998, and the jury found the defendant guilty as charged.
On November 24, 1998, the defendant's attorney requested that a pre-sentence investigation report be compiled, which the trial judge denied. Thereafter, the trial judge sentenced the defendant to serve twenty-five years imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. The defendant filed a Motion for an Appeal that day, which was granted.

PRO-SE ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error, the defendant complains that his right to due process was violated when the trial judge overruled the defense attorney's objection and allowed the district attorney to ask the defendant the following questions:
Q: [District Attorney] Now, Brandon, if you had robbed this lady, you certainly wouldn't come into Court and say, "Yeah, I robbed her," would you?
Mr. Doyle: [Defense Attorney] Your Honor, I'm going to object. It calls for 
The Witness: [Defendant] I ain't robbed the lady.
The Court: Overruled. Go ahead. You can answer.
CROSS EXAMINATION
By Mr. Bates: [District Attorney] You certainly 
The Court: Wait. I didn't hear the answer. What was your answer?
The Witness: I said, "No, I wouldn't say that." But I know I ain't robbed this lady.
The Court: Okay.
CROSS EXAMINATION
By Mr. Bates: Okay. But if you did, you wouldn't come in here and say that, because then, of course, you would be admitting to having committed the crime?
A: [Defendant] Let me tell you like this. I never did rob nobody. I have people out there that care for me. I ain't had to rob nobody. I say it like that. I ain't had to rob nobody.
The defendant complains that this line of questioning "destroyed Watt's [sic] ability to be credible" with respect to his involvement in the commission of the crime.
The defendant also complains that the district attorney improperly referred to this line of questioning during his closing argument, and points to the following excerpt from the district attorney's rebuttal argument:
... He [Brandon Watts] wanted to take the stand and have you hear him say, "I didn't do this." Well, did you really expect him to get on the stand and say anything else? Just be honest with yourselves. Did you really expect him to get on the stand and say anything other than, "You've got the wrong guy. I didn't do this." What else could he *62 say? Would (sic) else would you expect him to say? ...
The present case is both factually and procedurally distinguishable from State v. Sepulvado, 93-2692, p. 13 (La.4/8/96), 672 So.2d 158, 167, cert. denied, reh'g denied, 519 U.S. 934, 117 S.Ct. 310, 136 L.Ed.2d 227 (1996), upon which defendant relies. The defendant complains that the district attorney "[i]ngeniously ... destroyed Watt's ability to be credible" on the issue of whether he committed the crime. During direct examination, the defendant denied that he robbed the victim at gunpoint. The district attorney's questions were for the purpose of discrediting the defendant's testimony, which was also discredited by the victim's testimony.
With respect to the defendant's second claim, it is initially noted that the defense attorney did not contemporaneously object to the district attorney's closing argument. Recently, in State v. Rochon, 98-717 (La.App. 5 Cir. 3/10/99), 733So.2d 624 (relying upon State v. Colligan, 95-880 (La.App. 3 Cir. 8/7/96), 679 So.2d 184), this Court noted that "the Supreme Court has held that despite lack of timely objection by defense counsel to the prosecutor's closing argument, if the remarks are extremely inflammatory and prejudicial, then a reversal is required."
Regarding the scope of closing and rebuttal argument, LSA-C.Cr.P. art. 774 states as follows:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the State or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The State's rebuttal shall be confined to answering the argument of the defendant.
The jurisprudence has commonly held that although prosecutors are allowed broad latitude in choosing closing argument tactics, prosecutors may not resort to personal experience or turn argument into a plebiscite on crime. State v. Rochon, 733 So.2d at 630. Nevertheless, a conviction is not reversed due to improper remarks during closing arguments unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. Id.
In the present case, during direct examination, the defendant claimed that he did not rob the victim at gunpoint. The district attorney's rebuttal argument was an attempt to cast doubt on the defendant's credibility and, therefore, was not improper. Considering the victim's unwavering testimony that the defendant was the person who placed a gun to her side and demanded that she give him her money, the district attorney's remarks were not inflammatory or prejudicial.

PRO-SE ASSIGNMENT OF ERROR NUMBER TWO
Assignment of Error Number Two asserts that Brandon Watts' conviction stands in violation of the U.S. Constitution's requirement that guilt must be proved beyond a reasonable doubt at a criminal trial.
The defendant complains that the state did not offer sufficient evidence to support his conviction for armed robbery, in violation of LSA-R.S. 14:64. Specifically, the defendant complains that the state failed to prove that he was the perpetrator. His argument centers on the fact that he testified that he did not commit the robbery.
The appropriate standard of review for determining the sufficiency of the evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In Jackson, the Supreme Court explained that when assessing the sufficiency of the evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id.See *63 also State v. Rosiere, 488 So.2d 965 (La. 1986).
With respect to the credibility of witnesses, the Louisiana Supreme Court has stated:
It is the role of the fact-finder to weigh the respective credibilities of witnesses, and this court will not second-guess the credibility determinations of the trier of fact beyond our sufficiency evaluations under the Jackson standard of review.
State ex rel Graffagnino v. King, 436 So.2d 559, 563 (La.1983). It is not the function of the appellate court to assess the credibility of witnesses or to reweigh the evidence.[3]
The defendant was convicted of armed robbery, for which LSA-R.S. 14:64 provides in pertinent part:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.

. . .
Proof of armed robbery pursuant to LSA-R.S. 14:64 requires a showing that the defendant took something of value from another while armed with a dangerous weapon. State v. Alexander, 98-993 (La. App. 5 Cir. 3/10/99), 734 So.2d 43. Encompassed in proving the elements of armed robbery is the necessity of proving the identity of the defendant as the perpetrator and when the key issue in the case is identification, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. Id.
To establish that the defendant was the person who committed the armed robbery, the state presented the testimony of the victim, Ms. Glen. She testified unequivocally that the defendant was the person who placed a gun to her side and demanded that she give him her money. She identified the defendant in court as the perpetrator. Although the defendant denied any involvement in the crime, and although his mother offered an alibi for the defendant's whereabouts at the time of the crime, the jury apparently believed Ms. Glen and not the defendant or his mother. Given the fact that the defendant's mother's credibility was called into question because of deviation in her factual testimony between the first and second trial, a rational trier of fact could have concluded beyond a reasonable doubt that the defendant was the perpetrator. This assignment has no merit.

PRO-SE ASSIGNMENT OF ERROR NUMBER THREE
Defendant argues that the sentence of twenty-five years without benefits, to be served under good time Act 1099, serves no legitimate penal interest, and constitutes nothing more than the needless infliction of suffering upon Brandon Watts. Second, defendant argues that his counsel was ineffective for failing to object to the severity of the sentence, for failing to bring to the Court's attention important mitigating sentencing factors, and for failing to properly preserve sentencing errors for review on appeal.[4]
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. State v. Lassere, 95-1009 (La.App. 5 Cir. 10/1/96), 683 So.2d 812, writ denied, 96-2655 (La.4/18/97), 692 So.2d 445. A sentence is grossly disproportionate *64 if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Id. The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. Id.
The court should consider three factors in reviewing a judge's sentencing discretion: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Richmond, 97-1225 (La.App. 5 Cir. 3/25/98), 708 So.2d 1272. The Louisiana Supreme Court recently noted that "[o]n appellate review of sentence, the relevant question is `whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.'" State v. Thomas, 98-1144, pp. 1-2 (La.10/9/98), 719 So.2d 49, 50.
LSA-R.S. 14:64(B) provides the penalty for armed robbery as not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence.
The defendant received a sentence of twenty-five years imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Considering the range of the possible penalty, the defendant received a sentence on the low end of the spectrum. Moreover, although the trial judge failed to articulate what factors he was considering, as required by LSA-C.Cr.P. art. 894.1, the record provides an adequate factual basis for the sentence imposed. Although the defendant claims in his brief that the victim was "neither threatened nor harmed," the victim testified that the defendant placed a gun to her side and demanded that she give him her money. The victim responded affirmatively when asked whether she was in fear for her safety and well-being, and when asked whether she was afraid that she was going to be shot. Additionally, the defendant admitted during the trial that he was convicted as a juvenile for theft of an audio tape from a store. Therefore, the defendant's sentence is not constitutionally excessive.
Finally, regarding the defendant's claim that his trial attorney was ineffective, "[a] claim of ineffective assistance of counsel generally is more properly raised in an application for post-conviction relief than on appeal." State v. Brumfield, 96-2667 (La.10/20/98), 737 So.2d 660, cert. denied, ___ U.S. ___, 119 S.Ct. 1267, 143 L.Ed.2d 362 (1999). In post-conviction proceedings, the trial judge can conduct a full evidentiary hearing on the issue. Id. However, if the appellate record contains evidence sufficient to decide the issue, the appellate court may consider the issue in the interests of judicial economy. Id.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him.[5] To show "prejudice" as required in order to establish ineffective assistance of counsel, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different.[6] Effective assistance of counsel does not mean errorless counsel, or counsel who may be judged ineffective on mere hindsight. State ex rel. Graffagnino, 436 So.2d at 564. There *65 is a strong presumption that counsel was acting professionally and that his decisions were strategic in nature. State ex rel. Scales v. State, 98-2119, 98-2178, p. 2 (La.8/14/98), 718 So.2d 402.
In the present case, the defendant complains that his trial attorney failed to do three things during the sentencing hearing. First, he complains that his trial attorney "erred at sentencing by not calling any witnesses who could have shown that Brandon Watts had a loving family, which could help guide him to be a good citizen." He notes that his trial attorney "did not provide the Court with any other evidence other than his [the defense attorney's] own brief comments that Brandon was struggling in life because of a limited intellectual capacity." He also faults his trial attorney for not persuading the trial judge to order a pre-sentence investigation report.
The record reflects that, prior to sentencing, the defendant's trial attorney did request that the trial judge order a presentence investigation report, that the trial judge denied said request, and that the defendant's trial attorney objected to said denial. Moreover, the trial judge's reasons for denying said request are probative with respect to why the defendant's attorney may have elected not to call witnesses to testify regarding the defendant's mental capacity. As noted during the sentencing hearing, prior to trial, the defendant filed a Motion to Appoint a Sanity Commission to determine his competency to stand trial. During the hearing on the defendant's Motion to Appoint a Sanity Commission to determine his competency to stand trial, the defense and the state stipulated to a report, and the trial judge found the defendant competent to stand trial. Therefore, the trial judge had already heard information relative to the fact that the defendant was in special education classes and that he was a slow learner. The trial judge noted that he had heard testimony relative to the defendant's previous criminal history, and that he had heard the trial in its entirety twice. Therefore, the defendant has not demonstrated that his trial attorney's performance during the sentencing hearing was deficient, and thus failed to satisfy the first prong of Strickland.
With regards to the defendant's claim that his trial attorney was deficient for failing to file a Motion to Reconsider his Sentence, this Court has reviewed a defendant's sentence for constitutional excessiveness out of an abundance of caution even where a defendant's trial attorney failed to object or to file a Motion to Reconsider Sentence. Therefore, the defendant has not demonstrated that his trial attorney's performance during the sentencing hearing was deficient, and thus failed to satisfy the first prong of Strickland.
The Anders brief filed on behalf of the defendant by his appellate counsel also requested an errors patent review. A review of the record reveals no errors patent.
Accordingly, we affirm the defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] The brief filed by counsel must review not only the procedural history of the case and the evidence presented at trial but must also provide, as did the advocate's brief in State v. Mouton, 95-0981, p. 2 (La.4/28/95), 653 So.2d 1176, 1177, "a detailed and reviewable assessment for both the defendant and the appellate court of whether the appeal is worth pursuing in the first place." Id., 653 So.2d at 1177.
[2] 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), reh. denied, 388 U.S. 924, 87 S.Ct. 2094, 18 L.Ed.2d 1377 (1967), discussed in State v. Benjamin, 573 So.2d 528 (La.App. 4 Cir.1990), and adopted in State v. Bradford, 95-929, 95-930 (La.App. 5 Cir. 6/25/96), 676 So.2d 1108.
[3] State v. Rosiere, 488 So.2d at 968; State v. Sampson, 95-58, p. 7 (La.App. 5 Cir. 5/30/95), 656 So.2d 1085, 1088, writ denied, 95-1665 (La.11/27/95), 663 So.2d 730.
[4] We note that defendant's appellate counsel, in his brief, notes that the 25 year sentence is not constitutionally excessive.
[5] Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042, p. 9 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069,1075, writs denied, 94-0475 (La.4/4/94), 637 So.2d 450, 94-1361 (La.11/4/94), 644 So.2d 1055.
[6] Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064; Soler.