895 So.2d 45 (2005)
STATE of Louisiana
v.
Derrick TOMLINSON.
No. 04-KA-992.
Court of Appeal of Louisiana, Fifth Circuit.
January 25, 2005.
*46 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District Parish of Jefferson, Terry M. Boudreaux, Assistant District Attorney, Gretna, LA, for Plaintiff/Appellee.
Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, LA, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS, and WALTER J. ROTHSCHILD.
SOL GOTHARD, Judge.
Defendant, Derrick Tomlinson, appeals his conviction and sentence on a charge of distribution of cocaine in violation of La. R.S. 40:967(A). For reasons that follow, we affirm both the conviction and the sentence.
The record shows that defendant was arraigned on July 14, 2003 and pled not guilty. He was tried on April 12 and 13, 2004 before a twelve-person jury which unanimously found defendant guilty as charged. In due course, the trial court sentenced defendant to imprisonment at hard labor for ten years, with the first two years to be served without benefit of parole, probation, or suspension of sentence. Defendant filed a motion for new trial that was denied, and a timely motion for appeal that was granted.

FACTS
At trial Robin Jones, a former undercover agent for the Jefferson Parish Sheriff's *47 Office (JPSO), testified that on March 17, 2003, at approximately 2:50 p.m., she arrived in the 200 block of Barry Avenue where she saw defendant, who she knew at the time as "Hippie," standing and waiting.[1] She advised defendant that she was there to purchase a quarter ounce of crack cocaine, on a deal already set up by a confidential informant. Defendant informed Agent Jones that his source of supply wanted to see the money first, so she handed him $250, and defendant left. Approximately one hour later, defendant returned and gave her the narcotics in a clear plastic bag. Defendant wanted Agent Jones to break off a piece for him, but she refused to do so. Agent Jones then met with Sgt. Jason Renton in a prearranged location and turned over the evidence to him. Sgt. Renton field tested the substance which tested positive for cocaine.
On March 24, 2003, Sgt. Renton showed Agent Jones a photographic lineup, in which she identified defendant, without hesitation, as the individual who sold her the drugs. She also positively identified defendant in court. Agent Jones explained that the audio and video system in her vehicle did not record the transaction, because the confidential informant who had set up the deal was in the vehicle with her, and they wanted to ensure his safety.
JPSO Det. Pat DiGiovanni testified that he was part of the surveillance team who monitored the transaction between Agent Jones and defendant. However, he explained that he did not hear or observe the transaction. A few minutes after receiving a physical description of defendant from Agent Jones, he saw defendant walking away from the 200 block of Barry Avenue to the apartment complex at 261 Jules Avenue.
After that, Det. DiGiovanni observed defendant get onto a bicycle and peddle away on Jefferson Highway. Approximately one-half hour later, defendant rode back on the bicycle, went to 261 Jules Street, and then proceeded across the street to meet with Agent Jones. Det. DiGiovanni positively identified defendant in court as the individual he saw that day on the bicycle.
JPSO Sgt. Jason Renton testified that he set up, supervised, and monitored the transaction between Agent Jones and defendant. Although Sgt. Renton did not observe the transaction, he listened to it on a transmitter. His testimony largely corroborated that of Agent Jones and Det. DiGiovanni.
Additionally, Sgt. Renton testified that on May 29, 2003, he and Agent Valley went to defendant's residence, and that once defendant saw them, he tried to walk away quickly. Sgt. Renton ultimately stopped defendant, placed him under arrest, and advised him of his rights. Sgt. Renton testified that when he told defendant he was being arrested for distribution of cocaine, defendant said, "I don't distribute drugs, ... you've got to be mistaken." Sgt. Renton further testified that he told defendant that he sold drugs to an undercover agent, and that defendant said, "[W]ell, the only reason I could see me doing something like that ... is I'm a user and I might have did something like that to support my habit."
Andrea Travis, a stipulated expert in the field of forensic science and identification of controlled dangerous substances, testified that the tests she conducted on the *48 substance in this case were all positive for cocaine.
After the State rested, the defense called Mary Bonona as a witness. Ms. Bonona testified that defendant had been her boyfriend for five and a half years, and that he was the father of her two children. Ms. Bonona further testified that defendant was working on the morning of March 17, 2003, that he returned home at approximately 1:00 or 1:30 p.m. While he was gone, someone named "Eric," who lived in the apartment complex, was looking for defendant so they could smoke crack cocaine together.
Ms. Bonona explained that defendant left her apartment at 2:00 p.m. with "Eric," and that defendant returned at approximately 4:00 or 4:30 p.m. She testified that, approximately three or four months prior to March 17, 2003, Sgts. Renton and Cline walked into her apartment and asked if she knew the whereabouts of defendant. When she told them he was at work, they said they would be back later.
Ms. Bonona also testified that on March 17, 2003, in a conversation with Sgt. Renton, defendant admitted that he was a drug user, but denied selling drugs to any undercover agent. Ms. Bonona further stated that defendant did not imply he might have sold drugs. She maintained that defendant used crack cocaine and marijuana, but that she had never known him to sell drugs.
Defendant took the stand on his own behalf. He testified that, on March 17, 2003, he left his apartment and went with "Eric" to smoke crack cocaine. Defendant stated that "Eric" moved out of the complex approximately seven or eight months ago, and that he had no doubt that "Eric" was working for the police.
Defendant explained that prior to March 17, 2003, he had seen Sgt. Renton quite a few times walking around the apartment complex. He testified that between January and March of 2003, Sgt. Renton put him (defendant) against the wall, searched him, and asked him if he knew of any drug dealings going on.
Defendant testified that on the day he was arrested, he told the officer that he might use drugs, but that he did not sell them. He denied implying that he might have sold drugs or that he offered to sell drugs for "Eric."
Defendant admitted to having prior convictions in 1995 for theft and in 1996 for forgery, but he denied any drug convictions.
Sgt. Renton, who was called by the State as a rebuttal witness, testified that he had never seen defendant before March 17, 2003, and that the first time he ever had any contact with defendant was at the arrest on May 29, 2003. Sgt. Renton maintained that he had never been partners with Sgt. Cline, and that Sgt. Cline was not present on the night of May 29, 2003.
JPSO Det. Richard Valley, who was also called by the State as a rebuttal witness, testified that he was involved in defendant's arrest on May 29, 2003 along with Sgt. Renton, and that no other officers were present.

LAW
In the only assignment presented for our review, defendant argues that the trial court erred by imposing an excessive sentence without giving reasons pursuant to La.C.Cr.P. art. 894.1. He contends that his sentence was excessive because the evidence indicated that he was an addict and not a supplier; that he worked and provided for his wife and two young children; that for almost ten years he had not been convicted of any crimes; that this was not a crime of violence; that this was *49 a one-time occurrence; and that the legislature had shown an intent to impose lesser sentences and/or alternative programs to treat people convicted of drug-related problems.
The State responds that the ten-year sentence is not excessive, and that the trial court did not abuse its discretion in imposing the sentence.
Both the United States and the Louisiana Constitutions prohibit the imposition of excessive or cruel punishment. U.S. Const. Amend. VIII; La. Const. of 1974, art. I, § 20. A sentence is constitutionally excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering. State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839. Trial judges are granted great discretion in imposing sentences and a sentence will not be set aside as excessive absent clear abuse of that broad discretion. State v. Bacuzzi, 97-573 (La.App. 5 Cir. 1/27/98), 708 So.2d 1065, 1068-1069.
In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock our sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing sentence. State v. Brown, 99-172 (La.App. 5 Cir. 9/28/99), 742 So.2d 1051, 1056, writ denied, 99-3148 (La.4/20/00), 760 So.2d 340. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Watts, 99-311 (La.App. 5 Cir. 8/31/99), 746 So.2d 58, 64, writ denied, 99-2733 (La.3/24/00), 758 So.2d 145.
Three factors are considered in reviewing a trial court's sentencing discretion: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Watts, supra.
Prior criminal activity is one factor to be considered by the trial judge when sentencing a defendant and is not limited to prior convictions. State v. Perkins, 02-502 (La.App. 5 Cir. 10/29/02), 831 So.2d 455, 458, writ denied, 02-3173 (La.9/26/03), 854 So.2d 348 (citations omitted).
Defendant was convicted of one count of distribution of cocaine and sentenced to imprisonment at hard labor for ten years. La. R.S. 40:967(A). The penalty provision for that offense is found in La. R.S. 40:967(B)(4)(b) which provides for a term of imprisonment at hard labor of not less than two years nor more than thirty years, with the first two years of said sentence being without benefit of parole, probation, or suspension of sentence, and a possible fine of not more than fifty thousand dollars.
The trial judge initially sentenced defendant to imprisonment at hard labor for fourteen years. Defendant then asked for mercy, explaining to the trial judge that he was the sole supporter of his fiancee and two young children, that he did not want them to go on welfare, that he had not been in trouble in almost ten years, and that this was a one-time incident. Defense counsel objected to the fourteen-year sentence based on the small amount of cocaine involved.
The trial judge told defendant and his fiancee that the State reserved the right to multiple bill him, and if it did so, he would receive a minimum sentence of fifteen *50 years. He reduced the sentence to ten years, but told defendant that the State had specifically indicated its intent to file a multiple bill to the trial court.
The record indicates that defendant was arrested numerous times dating back to 1991, and that he has previous convictions for theft in 1995 and forgery in 1996. As such, defendant's behavior demonstrates a propensity toward criminal activity. Although the trial judge could have sentenced defendant to a maximum of thirty years, he sentenced him to a low-range sentence of ten years. It is clear that the trial judge considered the mitigating factors cited by defendant since he reduced defendant's sentence by four years. Accordingly, we find the trial court did not abuse its discretion in sentencing defendant.
This Court has reviewed the record for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and found two such errors.
We note first that defendant was charged in the bill of information with distribution of a controlled dangerous substance, to wit: cocaine, in violation of La. R.S. 40:967(A). The jury charges and the verdict form provided the jury with five responsive verdicts:
1) Guilty of production, manufacture, distribution or dispensation of a controlled dangerous drug;
2) Guilty of attempted production, manufacture, distribution or dispensation of a controlled dangerous drug;
3) Guilty of possession of a controlled dangerous substance;
4) Guilty of attempted possession of a controlled dangerous substance;
5) Not Guilty.
The jury returned a verdict of "Guilty of production, manufacture, distribution, or dispensation of a controlled dangerous drug." Defendant was charged with possession with intent to distribute, but not with production or manufacture or dispensation of a controlled dangerous substance. Although the jury charge contained crimes with which defendant was not charged, we find that the inclusion of the word "or" in the jury charge, and the fact that defendant was not subjected to additional sentence exposure, show that the defendant was not prejudiced by the error. Therefore, no corrective action is necessary.
We also find that the trial court failed to advise defendant of the prescriptive period for seeking post-conviction relief as mandated by La.C.Cr.P. art. 930.8. We hereby remand this matter to the district court, and order the court to inform defendant of the provisions of La.C.Cr.P. art. 930.8 by sending appropriate written notice to defendant within ten days of the rendition of the opinion and to file written proof that defendant received the notice in the record of the proceedings. State v. George, 99-887 (La.App. 5 Cir. 1/4/00), 751 So.2d 973, 975.
AFFIRMED AND REMANDED WITH ORDER.
NOTES
[1] She explained that "Robin Jones" was not her real name and that she used that name to protect her and her family's safety.