729 So.2d 104 (1999)
STATE of Louisiana
v.
Tonka HAYNES.
No. 98-KA-588.
Court of Appeal of Louisiana, Fifth Circuit.
February 23, 1999.
*105 Paul D. Connick, Jr., District Attorney, Rebecca J. Becker, Terry Boudreaux, Lori Butler, Cameron Mary, Assistant District Attorneys, Gretna, Louisiana, Counsel for plaintiff-appellee.
Clayton V. Bankston, Metairie, Louisiana, Counsel for defendant-appellant.
Court composed of Judges H. CHARLES GAUDIN, JAMES L. CANNELLA and SUSAN M. CHEHARDY.
GAUDIN, Judge.
Tonka Haynes[1] was convicted of attempted second degree murder of Jermon Rodriquez and sentenced as a multiple offender to life in prison.
On appeal, Haynes assigned 11 district court errors. Finding no reversible error, we affirm Haynes' conviction and sentence.
On March 11, 1997, Haynes shot Rodriquez in the neck. There are two versions of the shooting, one offered by the prosecution and one presented by the defense. Obviously, the jury found by unanimous 12-person vote, that the state's case proved guilt beyond a reasonable doubt.
Haynes assigned these errors:
(1) the trial judge commenced the trial in such a manner as to deprive him of due process and a fair trial,
(2) the state conducted improper and suggestive voir dire,
(3) the state failed and refused to provide him with exculpatory information,

*106 (4) the juvenile records of the Rodriquez brothers were discoverable as Brady[2] material, but were not produced,
(5) the state failed to prove the crime charged by a sufficiency of the evidence,
(6) the jury failed to adequately consider the evidence before reaching a verdict,
(7) the state entered evidence of other crimes without filing a Prieur motion beforehand,
(8) the trial judge allowed into evidence expert testimony by a non-expert witness,
(9) the sentence was so excessive and unreasonable as to constitute cruel and unusual punishment,
(10) the trial judge failed to articulate his reasons for imposing sentence, and
(11) the trial judge imposed an illegal sentence under the multiple billing motion.

ASSIGNMENT NO. 1
Haynes argues that he suffered prejudice because the trial was completed in one day, and jurors were exhausted by the time deliberations began. LSA-C.Cr.P. art. 17 provides, in pertinent part, that a court has the duty to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done.
The record in the instant case shows that jury selection began at 1:15 p.m. on October 16, 1997. Both the trial judge and defense counsel informed prospective jurors that they intended to complete the trial that day, and it was anticipated the proceedings would run into the evening. Jurors were allowed to raise any conflicts they might have with the schedule. The court called a short recess after the jurors were sworn. Opening statements began at 3:21 p.m. After the state's first three witnesses testified, the trial judge ordered a 10-minute recess. After two more witnesses, the court called another recess to allow the jurors to eat.
Closing arguments began at 8:05 p.m. The trial judge read the jury instructions beginning at 8:25 p.m. and the jury began its deliberations at 8:35 p.m.
The record shows no specific objection to the trial schedule. The trial was conducted in an expeditious manner as required by article 17, while still allowing the jurors sufficient breaks. See State v. Felde, 422 So.2d 370 (La.1982). There is no evidence in the record that the jurors complained about the schedule, or that they were refused needed breaks. It does not appear that Haynes was prejudiced by the completion of the trial in one day.

ASSIGNMENT NO. 2
Haynes' argument in support of this assignment consists only of the assertment that the state improperly used the voir dire proceedings to conduct an opening statement which served to prejudice and poison the jury before the first witness was sworn. He does not point to any specific statements of the prosecutor which were objectionable. The transcript does not reflect that defense counsel made any objections. Haynes did not properly preserve this issue for appeal and it is not fully briefed. Assignments of error neither briefed nor argued are considered abandoned.

ASSIGNMENT 3 AND 4
These assignments of error relate to the juvenile records of the state's two main fact witnesses, Jermon Rodriquez and his brother, Dermon Rodriquez.
Haynes contends that his motions for discovery were not complied with. The motions asked for "rap sheets" of prosecution witnesses.
The state says it provided defense counsel with "open file" discovery. The state's file, according to its brief, contained all juvenile adjudications of the Rodriquez brothers. In any event, immediately before trial, the judge asked if there were any outstanding motions. Haynes' counsel replied: "Not that I'm aware of, Your Honor."
*107 During the trial, there was no attempt to impeach or challenge the testimony of either Rodriquez brother with evidence of juvenile records. The record does not indicate that the trial judge, at any time, was asked to make an in-camera inspection of the juvenile records to see if they contained anything material to the defense.
Because there is no mention in the record of the alleged exculpatory evidence being at issue, there is nothing for this Court to review. Courts of appeal have no authority to review facts not contained in the trial court record. See State v. Bowers, 712 So.2d 302 (La.App. 5 Cir.1998). Haynes seeks to prove his allegations that the state failed to provide him with exculpatory evidence in violation of Brady, his proper remedy is by post-conviction relief, wherein an evidentiary hearing could be conducted if necessary.

ASSIGNMENT NO. 5
By this assignment, Haynes argues that the state failed to prove he had the requisite intent to support a conviction for attempted second degree murder. The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.
To prove an attempted second degree murder, the state must establish, beyond a reasonable doubt, that a defendant specifically intended to kill a human being and that he committed an overt act in furtherance of that goal. Specific intent is defined as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. Because specific intent is a state of mind, it need not be proven as a fact but may be inferred from the circumstances and actions of the accused. The determination of whether the requisite intent is present in a criminal case is a matter for the trier of fact, and a review of this determination is to be guided by the Jackson standard.
The record and prosecution testimony show that on March 11, 1997, 18-year-old Jermon Rodriquez and his twin brother Dermon rode a bus to visit their grandmother in Marrero, Louisiana. Approximately two hours later when the Rodriquez brothers were walking back to the bus stop, Haynes accused Jermon of taking his drugs. Haynes put his left arm around Jermon, then pulled a handgun from his pocket and shot Jermon in the neck.
Haynes admits that there was a confrontation between him and Jermon Rodriquez but, according to Haynes, it was Jermon who drew a pistol and threatened him (Haynes). During a struggle which ensued, Haynes said, the pistol discharged, striking him in the arm and Jermon in the neck.
Proof of the fact that he had no specific intent to kill, Haynes contends, is that he left the scene with Jermon "helpless but still alive and kicking." From Hayes' brief:
"Wise policy and `street sense' would have called for Mr. Haynes to administer the coup d'grace to Jermon Rodriquez with a shot to the head followed by eliminating Dermon Rodriquez as a threat and witness ..."
After the shooting, Dermon ran to his grandmother's house and called police. At West Jefferson Hospital later, both Rodriquez brothers identified Haynes as the perpetrator.
Haynes' cousin Paul Adams testified that the Rodriquez brothers were the aggressors but the jury gave more credence to the Rodriquez brothers' testimony. Both Jermon and Dermon said that Haynes produced the pistol and shot Jermon. Demon was about six feet away, and he stated that Haynes pulled the gun from his right rear pocket and shot Jermon.
The question of credibility is within the sound discretion of the trier of fact, in this case the jury, who may accept or reject, in whole or part, the testimony of any witness. Credibility of witnesses is not reweighted on appeal. If the Rodriquez brothers were believed, as obviously they were, *108 the evidence was sufficient under the Jackson standard to prove that, as the jury found, Haynes had the specific intent to kill Jermon Rodriquez.
Haynes believes and so states in his brief that the 12-person jury, which he says included 10 suburban white people, "could not be expected to be familiar with the manners and mores of the black drug-dealing sub culture exemplified by the Rodriquez brothers." Haynes says that a jury of his true peers "from the gritty streets of Marrero" would not have found him guilty. The record has no proof or even a suggestion that this could be true.

ASSIGNMENT NO. 6
Here, Haynes argues that the jury wanted out of the courthouse as quickly as possible without sequestration and that, consequently, jurors did not adequately deliberate.
The jury retired to deliberate at 8:35 p.m. and returned its verdict at 9:02 p.m. There is no indication that the trial judge pressured jurors to hurry their decision.
This trial was neither complex nor extensive. We are unable to say that more time was required before the jury unanimously agreed on a verdict of guilty.

ASSIGNMENT NO. 7
Both Rodriquez brothers testified that before Haynes shot Jermon, he (Haynes) accused Jermon of taking his "dope". Defense counsel objected on the grounds that this testimony constituted other crimes evidence prohibited by State v. Prieur, 277 So.2d 126 (La.1973). The trial judge correctly ruled that this testimony was part of the res gestae and was admissible without prior Prieur notice or a hearing.

ASSIGNMENT NO. 8
By this assignment, Haynes contends that the trial judge erred in allowing Keri Laborde, the emergency medical technician (EMT) who treated him to give opinion testimony although she was not qualified as an expert witness. It is first noted that defendant did not object at trial to the testimony at issue. He did not, therefore, preserve the issue for appeal.
Generally, a lay witness may only testify to the facts within his or her knowledge and not to impressions or opinions. However, a witness is permitted to draw reasonable inferences from his or her personal observations.
Laborde testified that Haynes had an injury to his left forearm. There were two puncture marks, approximately one inch to one and one-half inches apart. One appeared to Laborde to be an entrance wound, and the other an exit wound. Without objection by the defense, the prosecution had Laborde point to the location of the injuries on Haynes' arm.
Haynes complains that Laborde offered her opinion as to which of the two wounds was the entrance wound and which was the exit wound. Laborde testified, "Well, from working the street after so many years I seen so many gunshots. But nine out of ten times the small hole is the entrance and, as the bullet comes out the other side, it's going to blow, so the larger hole is going to blow, so the larger hole is going to be the exit". This testimony was not elicited by the state, but by the defense on cross-examination. Moreover, Laborde properly testified to inferences she made based on her personal observations and her experience as an EMT. This assignment of error is without merit.

ASSIGNMENTS 9, 10 AND 11
Haynes contends that his sentence was cruel, unusual and illegal and that the trial judge did not articulate his reasons. Haynes had two prior convictions for possession of cocaine and was sentenced under LSA-R.S. 15:529.1(A)(1)(b)(ii), which reads:
"If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of *109 his natural life, without benefit of parole, probation or suspension of sentence".
At the habitual offender hearing, the state proved that Haynes had two prior convictions for the possession of cocaine. Although Haynes argues that these prior convictions for possession of cocaine where "petty drug convictions," they were felonies which served to trigger the provisions of the Habitual Offender Law.
Haynes' third felony conviction, for attempted second degree murder is defined as a crime of violence under R.S. 14:2(3); thus, the mandatory sentence to be imposed for this triple felony offender was life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. This sentence is a mandatory one set by the legislature. It was unnecessary for the trial judge to articulate reasons.
We found no errors patent.
AFFIRMED.
NOTES
[1] Sentenced as Tonka Hayes.
[2] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).