733 So.2d 634 (1999)
STATE of Louisiana
v.
Israel J. McPHERSON.
No. 98-KA-1207.
Court of Appeal of Louisiana, Fifth Circuit.
March 30, 1999.
*635 Edward L. Greenlee, Baton Rouge, Sandra C. Jenkins, Louisiana Appellate Project, New Orleans, for Defendant/Appellant.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Ellen S. Fantaci, Appellate Counsel, Deborah A. Villio, Joseph E. Roberts, Trial Counsel, Gretna, for Plaintiff/Appellee.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY, and MARION F. EDWARDS.
DALEY, Judge.
Defendant Israel McPherson appeals his conviction of one count of second degree murder, a violation of LSA-R.S. 14:30.1. Following a jury trial, defendant was found guilty of second degree murder and sentenced to serve life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. On appeal, McPherson argues that the evidence was insufficient to prove him guilty of second degree murder, and that the court erred in denying his motion for mistrial. We affirm, finding the evidence sufficient to convict the defendant as a principal, and that the trial court did not err in denying the motion for mistrial.

FACTS
At about 11:00 p.m. on May 2, 1997, Jefferson Parish sheriff's deputies responded to a report of a shooting at a Shell filling station at the corner of the Westbank Expressway and Claiborne Gardens in Westwego. Sgt. Kim Rodriguez was the first officer on the scene. When she arrived at the scene, she observed the victim, Reverend Wilson Smith, lying face-down on the ground. The victim was bleeding from the head area. No witnesses were present at the scene, and the officer helped secure the crime scene.
Sergeant Dennis Thornton of the homicide division reported to the scene at approximately 11:35 p.m. When he arrived, the victim's body had already been transported by paramedics to the hospital. He supervised the collection of evidence. Among the items recovered that night were two bullet fragments. Sgt. Thornton testified that one of the projectiles that was collected was determined to match the gun that was recovered from the defendant. The victim's vehicle was found idling with the driver's door open.
On May 3, 1997, Lieutenant Maggie Snow received a call from another officer to assist in conducting interviews. She interviewed the co-defendant, Mr. Kenneth Hill, and, based upon Hill's interview, he was arrested and a warrant was issued for the defendant's arrest. Thereafter, the defendant was located at his sister's house on Mount Rushmore Street and was arrested at approximately 3:15 a.m. on May 4, 1997. Following his arrest, the defendant *636 was advised of his rights and then proceeded to make three statements to the police. Each statement was played for the jury while they read along with copies of the transcriptions.
In his first statement, McPherson claimed that Hill had called him on the evening of May 2, 1997 and asked him to walk with him. They walked around the corner to the Shell station, stopping along the way to speak with three individuals named Freddy, Clancy, and Norman Jackson. The defendant spoke with a girl named Crystal while Hill purchased a few items. The defendant claimed that he noticed a man walk up to the store. After the defendant and Hill walked away from the store, the defendant claimed that Hill told him that he was going to rob the man. The defendant claimed further that he advised Hill to leave the man alone. Thereafter, the defendant claimed that he walked on to his home, that he heard several gunshots, but that he never saw the gun.
McPherson stated that he did not walk home with Hill, and that the next time he spoke with Hill was the following morning, when Hill called his house and told the defendant that he was scared. The defendant admitted that the whole situation was over a robbery attempt. He claimed that the reason he did not call the police to tell them about what Hill had done was because he was not a "rat." The defendant admitted that he had called Hill's house, and explained that he called to tell Hill to stop telling people that they had pulled an armed robbery and killed a man. In his statement, the defendant claimed that on the evening of the crime, he was wearing the same thing that he was wearing at the time the interview was taken. Lt. Snow testified that when she interviewed the defendant, he was wearing a white t-shirt and a pair of shorts.
In his second statement, the defendant admitted that he initially was carrying the gun on May 2, 1997. He claimed that he purchased the gun from Hill two months earlier. The defendant claimed that Hill asked him if he could carry the gun, and that he gave the gun to Hill. According to the defendant, Hill had never asked to borrow the gun before. They walked to the Shell station. The defendant claimed that upon learning that Hill planned to rob the victim, he told Hill to leave the man alone and that he began to walk home. The defendant claimed further that after he heard the gunshots, Hill caught up with him on Patton Street and gave the gun back to him. The defendant admitted that he gave the gun to one of his friends, and he agreed to take the police to retrieve it.
In his final statement to Lt. Snow, the defendant stated that he had taken the police to Mr. Ellison Harper's house. The defendant admitted that he had told Mr. Harper to give the police the gun. He admitted further that the gun retrieved from Mr. Harper's house was the gun he purchased two months earlier and that was used during the murder at the Shell station.
Colonel Walter Gordon confirmed that the defendant had taken the police to retrieve the gun from Mr. Harper's house. Col. Gordon also seized eight cartridges, two of which were Federal .38 caliber projectiles and six of which were RNP .357 caliber projectiles. Mr. Ellison Harper testified that he knew the defendant and that during the early part of May of 1997, the defendant told him that he was going to leave a gun at his house. The defendant left a gun and some bullets with Mr. Harper. Captain Louise Waltzer, an expert in firearms examinations, testified that she compared the bullet fragments that were recovered from the crime scene with the weapon that was recovered from Mr. Harper's house. She concluded that one of the bullet fragments recovered from the crime scene was fired from the weapon recovered from Mr. Harper's house.
Ms. Joan Knoten, who lived behind the Shell station, testified that she heard three gunshots at approximately 11:00 p.m. on *637 May 2, 1997. She looked out of a window and saw two black men running from the station. One, whom she described was wearing a light-colored cap and light-colored shorts, jumped from a wall at the station, and the other man, whom she described was wearing dark slacks or jeans, had already done so. According to Ms. Knoten, the two men were only a couple of feet apart. She could not see the men's faces, as the lighting in the parking lot behind the station was not very bright. Ms. Knoten testified that she did not wear glasses, and that her eyesight was pretty good.

ASSIGNMENT OF ERROR NUMBER ONE
In this assignment of error, the defendant argues that the state failed to produce sufficient evidence to prove his guilt beyond a reasonable doubt. He argues that the state failed to demonstrate that he was anything but a mere bystander. He claims that the state did not prove that he actually shot the victim or that he was a principal to the shooting.
The state responds that the evidence was sufficient to support the defendant's second-degree murder conviction under either the specific intent theory, as provided for in LSA-R.S. 14:30.1(A)(1), or the felony-murder theory, as provided for in LSA-R.S. 14:30.1(A)(2)(a).
The appropriate standard of review for determining the sufficiency of the evidence was set forth in Jackson v. Virginia.[1] In Jackson, the Supreme Court explained that when evaluating the sufficiency of the evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2]
With respect to the credibility of witnesses, the Louisiana Supreme Court has stated that it is the role of the fact finder to weigh the respective credibilities of the witnesses, and courts will not second guess the credibility determinations of the trier of fact beyond sufficiency evaluations under the Jackson standard of review.[3] It is not the function of the appellate court to assess the credibility of witnesses or to reweigh the evidence.[4]
LSA-R.S. 14:30.1 defines the crime of second degree murder, in pertinent part:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2)(a) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, second degree kidnapping, aggravated escape, drive-by shooting, armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
LSA-R.S. 14:24 provides that all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
In State v. Pierre,[5] the Louisiana Supreme Court qualified the concept of principals:

*638 ...All persons "concerned in the commission of a crime" are principals, La. R.S. 14:24, but this rule has important qualifications. Only those persons who knowingly participate in the planning or execution of a crime are principals. [cite omitted] Mere presence at the scene is therefore not enough to "concern" an individual in the crime. [cite omitted] Moreover, "an individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state." [cite omitted]
The state contends that the evidence supports the defendant's conviction pursuant to LSA-R.S. 14:30.1(A)(1). In State v. Pardon[6], this Court explained that in specific intent second-degree murder
... the offender must have specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. Specific intent is "that State of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10. Specific intent also may be inferred from the circumstances. [cite omitted]
In the present case, the evidence established that Hill shot the victim. The testimony also established that McPherson brought the gun with him, and gave it to Hill a few blocks before the Shell station, and got it back from Hill immediately after the shooting. A reasonable trier of fact could believe that defendant supplied the gun for Hill to use for the armed robbery. Although the defendant's statement to the police also reflects that he claimed that he left the scene before the shooting occurred, Ms. Knoten's testimony contradicted the defendant's version of the events, as she saw two men running away from the station, and stated that they were only a few feet apart while running.
While the evidence established that the defendant knew Hill was planning to rob the victim, defendant argues that no evidence established that the defendant had any knowledge that Hill planned to use the gun to kill the victim. However, this argument is not credible. Defendant gave Hill the gun just before the two arrived at the Shell station, and then Hill told him he planned to rob the victim. Hill may not have specifically told the defendant that he planned to use the gun in the robbery, but common sense indicates that defendant knew of Hill's plan to use to gun to facilitate the robbery, because Hill had just asked McPherson for the gun, and McPherson gave it to him. Thus, the evidence presented at trial demonstrated that the defendant was guilty as a principal to second-degree murder, based on felony murder pursuant to LSA-R.S. 14:30.1(A)(2)(a). Armed robbery is one of the felonies enumerated in LSA-R.S. 14:30.1(A)(2)(a). LSA-R.S. 14:64 defines armed robbery, in pertinent part:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
LSA-R.S. 14:27 defines attempt, in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

* * * * * *
The evidence presented during the trial demonstrated that the murder occurred during an attempted armed robbery. The defendant's own statements to the police admit this fact. The defendant's first and *639 second statements indicate that the defendant knew in advance of the shooting that Hill planned to rob the victim. However, in his first statement, the defendant denied that he knew Hill was carrying a gun. In the defendant's second statement, McPherson admitted that the gun was his, that he gave Hill the gun just before they reached the Shell station, and that after the crime was committed, Hill gave the gun back to him. Thereafter, Hill gave the gun to Mr. Harper to keep for him. Although the defendant claimed in his statements to the police that he left the station before the victim was shot and that Hill gave him the gun when he caught up with him on another street, Ms. Knoten saw two men running away, and noted that although one had just jumped over the fence behind the Shell station, the other was only a couple of feet behind the first.
Although defendant claimed that he left before the shooting occurred, Ms. Knoten's testimony established that he fled the scene with Hill after the shooting. The defendant admitted in his statements that he did nothing to prevent the commission of the crime, nor did he aid the victim in any way.
The trial evidence showed that the defendant was not merely present at the scene, but that he knew Hill planned to use the gun to commit an armed robbery against the victim, that he gave Hill the gun in furtherance of this purpose, and that, therefore, the defendant aided and abetted the crime such that he was a principal to the crime.
This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER TWO
The defendant complains that the trial judge erred in failing to grant the defense's motion for a mistrial following the state's introduction of evidence of other crimes. Specifically, the defendant complains that the following testimony given by Mr. Harper constituted evidence of other crimes that was inadmissible:
Q. [District Attorney] Did Mr. McPherson say anything to you about the gun?
A. No, nothing. But he had shot a gun before, shot it before.
The defendant notes that the trial judge did not admonish the jury. The defendant also complains that the state failed to provide notice that it planned to use a statement made by the defendant, and relies upon LSA-C.Cr.P. art. 716(B) for the proposition that the state should have done so.
The defendant's attorney did not object that this testimony constituted a statement made by the defendant such that notice pursuant to LSA-C.Cr.P. art. 716(B) was required. As such, this issue was not preserved for appellate review.[7]
Regarding the defendant's complaint that the trial judge erred by denying his motion for mistrial, LSA-C.Cr.P. art. 771 provides in pertinent part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
*640 Whether a mistrial should be granted is within the sound discretion of the trial court, and denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion.[8]
Mr. Harper's testimony did not constitute evidence of another crime, as he merely stated that the defendant had "shot a gun before, shot the gun before." Although the defendant's brief argues that "[t]he use of a firearm is illegal in most instances," there was no evidence presented to demonstrate that the defendant had committed any crime by using the gun. Mr. Harper's comment did not amount to inadmissible evidence of another crime. Therefore, the trial judge did not err in denying the defendant's motion for a mistrial.
Finally, with respect to the defendant's complaint that the trial judge failed to admonish the jury, the defense counsel did not request that an admonition be given to the jury. In the absence of such a request, the trial judge need not admonish the jury.[9]
This assignment of error has no merit.

ERRORS PATENT
The record was reviewed for errors patent according to LSA-C.Cr.P. art. 920. The trial judge did not advise the defendant of the prescriptive period for post-conviction relief, as mandated by LSA-C.Cr.P. art. 930.8(C), during original sentencing. We remand to order the trial judge to inform the appellant of the provisions of this article by sending appropriate written notice to him within ten days of this Court's opinion, and to file written proof in the record that the appellant received such notice.
Accordingly, the defendant's conviction is affirmed, and the matter is remanded as instructed above.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)
[2] Id. See also State v. Rosiere, 488 So.2d 965 (La.1986).
[3] State ex rel Graffagnino v. King, 436 So.2d 559, 563 (La.1983).
[4] State v. Rosiere, 488 So.2d 965, 968 (La. 1986); State v. Sampson, 95-58 (La.App. 5 Cir. 5/30/95), 656 So.2d 1085, writ denied, 95-1665 (La.11/27/95), 663 So.2d 730.
[5] 93-0893, p. 4 (La.2/3/94), 631 So.2d 427, 428
[6] 97-248, pp. 8-9 (La.App. 5 Cir. 10/15/97), 703 So.2d 50, 58-59, writ denied, 97-2892 (La.3/20/98), 715 So.2d 1207
[7] LSA-C.Cr.P. art. 841; State v. Grant, 517 So.2d 1151, 1154-1155 (La.App. 5 Cir.1987).
[8] State v. Brown, 96-1002, p. 9 (La.App. 5 Cir. 4/9/97), 694 So.2d 435, 439, writ denied, 97-1310 (La.10/31/97), 703 So.2d 19.
[9] State v. Mayer, 589 So.2d 1145, 1151 (La. App. 5 Cir.1991), writ denied, 609 So.2d 251 (La.1992).