749 So.2d 716 (1999)
STATE of Louisiana
v.
Dwayne McKINNEY.
No. 99-KA-395.
Court of Appeal of Louisiana, Fifth Circuit.
November 10, 1999.
*717 Margaret S. Sollars, Thibodaux, for Defendant/Appellant.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Ellen S. Fantaci, George C. Wallace, Jr., Assistant District Attorneys, Gretna, for Plaintiff/Appellee.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY and MARION F. EDWARDS.
DALEY, J.
Defendant, Dwayne McKinney, appeals his conviction of second degree murder. On appeal, he assigns as error the trial court's failure to grant his Motion for New Trial, which argued that the evidence was insufficient to convict him because the state did not prove the element of specific intent to kill or inflict great bodily harm. We affirm.
Dwayne McKinney was indicted on June 18, 1998 by a Jefferson Parish grand jury for second degree murder and pled not guilty at arraignment. After a trial, a jury of twelve persons returned a verdict of guilty as charged on December 3, 1998. Prior to sentencing, the defendant filed a Motion for New Trial, which the trial judge denied on December 16, 1998. The defendant waived delays, and was sentenced to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.[1] The defendant made an oral Motion for Appeal at sentencing, which was supplemented in writing and was granted by the trial judge.

FACTS
On October 14, 1997, Lance Johnson was the front seat passenger in a vehicle driven by Tirrell Gilmore. Evidence at trial established that the defendant, Dwayne McKinney, shot a gun into Tirrell Gilmore's vehicle and one of the bullets struck Lance Johnson in the head. Lance Johnson subsequently died as a result of the gunshot wound.
*718 Testimony at trial revealed that defendant, Dwayne McKinney, was married to Michelle Williams, Johnell Williams' sister. On the day of this incident, Johnell Williams and Marilana Williams were in the front yard of their residence on Lincoln Avenue in Marrero. Around 6:00 p.m., the defendant, Dwayne McKinney, drove up to the Williams' residence looking for his wife. Dwayne McKinney stepped out of his car and began arguing with Johnell Williams, his brother-in-law. At that point, Tirrell Gilmore, who was an acquaintance of Johnell Williams, passed by in his car and asked what was going on. Johnell Williams told Tirrell Gilmore that they were arguing because he did not want to talk to Dwayne McKinney. Tirrell Gilmore exited his car, and exchanged words with Dwayne McKinney.[2] According to Marilana Williams, when Tirrell Gilmore arrived, defendant, Dwayne McKinney, told Johnell Williams, "You called your boys on me."
Gwendolyn Alexander watched the events unfold from her front porch, which was four houses away from the Williams' residence. According to Gwendolyn Alexander, as well as Tirrell Gilmore and Marilana Williams, after defendant, Dwayne McKinney, exchanged words with Tirrell Gilmore, he went to his car, retrieved a gun and fired shots into the rear window of Tirrell Gilmore's car as Tirrell Gilmore drove away. Tirrell Gilmore drove to the next block and noticed that Lance Johnson, who was sitting in the passenger seat, had been shot in the head. Tirrell Gilmore then called 911.
Deputies, Rhett Madere and Brent Coussou, of the Jefferson Parish Sheriff's Office responded to the call.[3] Deputy Madere testified that when they arrived, they found Tirrell Gilmore hysterical and crying. The back window of Tirrell Gilmore's car was shattered and Lance Johnson was shot. He was still conscious, but could not talk. The back seat passenger, Kevin Dorsey, was unharmed. According to the autopsy report, Lance Johnson ultimately died on October 16, 1997 as a result of the gunshot wound.
A number of police officers investigated the incident that night. Detective Michael Tucker located six spent casings near each other. Five of the casings were on Lincoln Avenue and one of the casings was on Acre Street. Detective Ralph Sacks recovered a projectile from the front passenger's seat. According to Officer Carrigan, the bullet had entered the vehicle through the rear window and passed through the right back seat, penetrating the front passenger's head rest.
The witnesses to the shooting were interviewed that night. Detective Grey Thurman testified that based on the witnesses' statements and the evidence gathered from the scene, a warrant for the defendant, Dwayne McKinney's, arrest was issued. The defendant, Dwayne McKinney, was ultimately arrested in California during a routine traffic stop.
The defense presented no witnesses at trial.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error, the defendant contends that the trial court improperly denied his Motion for New Trial in which he alleged that the verdict was contrary to the law and evidence. The thrust of defendant's argument on appeal is that the evidence was insufficient because the State failed to prove the element of specific intent. He further contends that the evidence supported a verdict of manslaughter and in the alternative, the defendant argues the State failed to establish that he did not act in self-defense.[4] *719 The State responds that it proved beyond a reasonable doubt that the defendant was not acting in self-defense and that he had the specific intent to kill or to inflict great bodily harm when he pointed a gun and repeatedly fired it into Tirrell Gilmore's vehicle.
The appropriate standard of review for determining the sufficiency of the evidence was set forth in Jackson v. Virginia.[5] In Jackson, the Supreme Court explained that when evaluating the sufficiency of the evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. The reviewing court must decide, after viewing the direct and circumstantial evidence in the light most favorable to the prosecution, whether any rational trier of fact could find the defendant guilty beyond a reasonable doubt.[6] Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt.[7]
The defendant was convicted of second degree murder, which is "the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm." LSA-R.S. 14:30.1(A)(1). Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Specific intent may be inferred from the circumstances and actions of the accused.[8] The determination of whether the requisite intent is present in a criminal case is for the trier of fact and a review of the correctness of this determination is to be guided by the Jackson standard.[9]
The eyewitnesses testified at trial that the defendant repeatedly fired his gun directly into the back of Tirrell Gilmore's vehicle as Tirrell Gilmore drove away. The defendant, however, contends that the eyewitnesses were not believable. According to the defendant, the jury should not have believed Gwendolyn Alexander's testimony because she said that Tirrell Gilmore blew his horn when he passed her house, while Tirrell Gilmore denied that he had done so. The defense further alleged that Gwendolyn Alexander's testimony was tainted because her son had a baby with Dwayne McKinney's former wife and the two planned to get married, although Gwendolyn Alexander stated on direct that she had no reason to harm Dwayne McKinney or wish him in jail. Defendant further asserts that Tirrell Gilmore and Marilana Williams were not credible witnesses because they had used drugs. While Marilana Williams and Tirrell Gilmore admitted past drug problems, they *720 both told the jury that they were not on drugs at the time of this incident.[10]
The question of a witness's credibility is within the sound discretion of the trier of fact, in this case the jury, who may accept or reject, in whole or in part, the testimony of any witness.[11] The Jackson standard does not function as a vehicle for the reviewing court to second-guess the rational credibility determinations of the trier of fact.[12] In finding the defendant guilty as charged, the jury obviously believed the State's witnesses' testimony, and the jury apparently resolved any conflicts in the testimony in favor of the State.
Moreover, the circumstantial evidence in this case corroborates the witnesses' testimony and supports a finding of specific intent. The record reflects that the defendant fired several shots. Six spent casings were recovered from the scene, a projectile was recovered from Tirrell Gilmore's car and another projectile was removed from Lance Johnson's brain at the autopsy. Detective Tucker concluded that because the casings were found near each other, they were all fired from the same weapon. The State and the defense stipulated that the casings and the projectiles were fired from the same gun. In State v. Hidalgo, 95-319 (La.App. 5 Cir. 1/17/96), 668 So.2d 1188, 1197, a case cited by the State in its brief, this Court concluded that the defendant's act of firing a gun in the direction of victims who were running away from the scene supported a finding that the defendant had the specific intent to kill. Similarly, in this case, the defendant fired several shots directly into a fleeing car occupied by three people. Viewing all of the evidence, both direct and circumstantial, in the light most favorable to the prosecution, the State proved beyond a reasonable doubt that the defendant had the specific intent to kill or inflict great bodily harm.
Nevertheless, the defendant urges that the jury should have found that he committed justifiable homicide because he acted in self-defense. A homicide is justifiable "[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." LSA-R.S. 14:20. A person who is the aggressor or who brings on a difficulty cannot claim self-defense, unless he or she withdraws from the conflict in good faith.[13] When a defendant raises justification as a defense to murder, the State must prove beyond a reasonable doubt that the killing was not justified.[14]
At trial, the defense requested and received a jury instruction on the law of justifiable homicide. On appeal, defendant asserts that he reasonably believed his life was in danger because he thought Tirrell Gilmore and the two passengers came to intervene on Johnell's behalf. He asserts that he was merely trying to protect himself from the occupants of the car, one of whom was a gang member.
The jury heard evidence that the shooting was not gang-related. Detective Thurman, as well as Tirrell Gilmore, testified that Kevin Dorsey, the backseat passenger, was a member of the 5.9 Bloods gang. But Detective Thurman said that he had received no information that the other occupants of the car were gang members. *721 Although the detective said that he had investigated the possibility that the shooting was gang-related, he ultimately discarded that theory. Detective Thurman said he arrived at this conclusion after reviewing the witnesses' statements, including Kevin Dorsey's statement.[15]
The jury also heard testimony that Johnell Williams did not call Tirrell Gilmore to assist him in a confrontation with the defendant. Both Tirrell Gilmore and Johnell Williams denied that Johnell Williams had asked for Tirrell Gilmore's intervention. Tirrell Gilmore said he was en route to the pool hall near Johnell Williams' house when he saw the defendant and Johnell Williams arguing on the sidewalk. He said he stopped because he was curious. Tirrell Gilmore stated that he was still in his car when the defendant asked Johnell Williams if he had called his "people." According to Tirrell Gilmore, he exited his car because the defendant was talking "crazy ." Tirrell Gilmore stated he had seen Dwayne McKinney around, but that he really did not know him. When defendant retrieved the gun, Tirrell Gilmore drove away, and the defendant repeatedly fired shots into the car as Tirrell Gilmore sped away. Finally, there is nothing in the record to indicate the occupants of Tirrell Gilmore's car had a weapon or made any threats toward the defendant before the shooting. Based on the foregoing, the State proved beyond a reasonable doubt that the defendant did not act in self-defense.
Defendant alternatively contends that the evidence was insufficient to prove second degree murder because the mitigating factor of manslaughter was established. Manslaughter is a responsive verdict to second degree murder and is defined as a homicide committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of self control and cool reflection. LSA-C.Cr.P. art. 814(A)(3); LSA-R.S. 14:31.[16] The mitigatory factors of "sudden passion" and "heat of blood" distinguish manslaughter from murder.[17] To be entitled to the responsive verdict of manslaughter, the defendant must prove the mitigating factor by a preponderance of the evidence. Id. However, "[p]rovocation shall not reduce the homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled...." LSA-R.S. 14:31 A(1); State v. Baldwin.
In the appellate brief, defendant does not highlight any facts indicating that the killing occurred in sudden passion or heat of blood. Marilana Williams said that Dwayne McKinney and Tirrell Gilmore argued when Tirrell Gilmore arrived, but she said that she could not explain why the defendant began shooting. According to Marilana Williams, the defendant was "mad at Dank [Gilmore] and Dank ain't done nothing." In fact, none of the witnesses could explain why the defendant fired the gun. Gwendolyn Alexander testified Tirrell Gilmore did not appear threatening or hostile, and Marilana Williams said the defendant shot into the departing vehicle "[o]ut of the blue, for no reason." Based on the foregoing, the evidence supports the jury's determination to reject the *722 verdict of manslaughter in favor of second degree murder.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent.[18] The record reflects that the trial judge did not accurately advise the defendant of the period within which to file a Post-Conviction Relief Application. According to LSA-C.Cr.P. art. 930.8, a defendant has two years from the date his conviction is final to apply for post conviction relief, not two years from the sentencing date.[19] Therefore, we remand and order the district court to send written notice of the provisions of LSA-C.Cr.P. art. 930.8 to the defendant within ten days of the rendering of this opinion, and file written proof in the record that defendant received said notice. See State v. Stelly, 98-578 (La.App. 5 Cir. 12/16/98), 725 So.2d 562.
Accordingly, defendant's conviction is affirmed, and the matter remanded.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] The defendant was also charged with illegal carrying of a weapon by a convicted felon, a violation of LSA-R.S. 14:95.1, out of this incident. On the same day he was sentenced on the murder conviction, the defendant pled guilty to this charge. In this appeal, the defendant challenges only the murder conviction, not the guilty plea.
[2] It is noted that Tirrell Gilmore is also known as "Dank" and "Dink." Michelle Williams McKinney is also known as "Mickie."
[3] Deputy Coussou's testimony was essentially the same as Deputy Madere's testimony.
[4] The denial of defendant's motion for new trial based on LSA-C.Cr.P. art. 851(1) presents nothing for review on appeal. State v. Hampton, 98-331 (La.4/23/99), 750 So.2d 867. However, the Louisiana Supreme Court and this Court have addressed the constitutional issue of sufficiency of the evidence under such circumstances. See State v. Hampton and State v. Pascual, 98-1052 (La.App. 5 Cir 3/30/99), 735 So.2d 98.
[5] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); See also State v. Hawkins, 96-0766, p. 7 (La.1/14/97), 688 So.2d 473, 479 and State v. McPherson, 98-1207, p. 6 (La.App. 5 Cir. 3/30/99), 733 So.2d 634, 637.
[6] State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722; State v. Holmes, 98-490 (La.App. 5 Cir. 3/10/99), 735 So.2d 687.
[7] State v. Ortiz; State v. Stanley, 98-920, p. 6 (La.App. 5 Cir. 2/10/99), 729 So.2d 33, 35, writ denied, 99-614 (La.6/25/99), 745 So.2d 1186.
[8] State v. Graham, 420 So.2d 1126, 1127 (La. 1982); State v. Lewis, 98-672, p. 6 (La.App. 5 Cir. 3/10/99), 732 So.2d 556, 559.
[9] State v. Huizar, 414 So.2d 741, 751 (La. 1982); State v. Haynes, 98-588, p. 5 (La.App. 5 Cir. 2/23/99), 729 So.2d 104, 107.
[10] Gilmore told the jury he had a heroin problem in the past, but was undergoing methadone treatment at the time of this incident.
[11] State v. Bordenave, 95-2328, p. 2 (La.4/26/96), 678 So.2d 19, 20; State v. Haynes, 729 So.2d at 107.
[12] State v. Juluke, 98-341, p. 4 (La.1/8/99), 725 So.2d 1291, 1293; State v. McPherson, 733 So.2d at 637.
[13] LSA-R.S. 14:21; State v. Baldwin, 96-1660, p. 4 (La.12/12/97), 705 So.2d 1076, 1078, cert. denied, 525 U.S. 831, 119 S.Ct. 84, 142 L.Ed.2d 66.
[14] State v. Baldwin, supra; State v. Batiste, 96-1010 (La.App. 5 Cir. 1/27/98), 708 So.2d 764, 771, writ denied, 98-913 (La.9/4/98), 723 So.2d 954.
[15] Detective Thurman testified he was unable to locate Kevin Dorsey to testify at trial.
[16] LSA-R.S. 14:31(A)(1) provides that manslaughter is:

(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; * * * (rest of text omitted)
[17] State v. Baldwin, 705 So.2d at 1079; State v. Lewis, 97-160, (La.App. 5 Cir. 7/29/97), 698 So.2d 456, 458, writ denied, 97-2381 (La.3/27/98), 716 So.2d 881.
[18] LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990); and State v. Godejohn, 425 So.2d 750 (La.1983).
[19] It is noted that the Louisiana Legislature amended article 930.8, effective on August 15, 1999, to shorten the prescriptive period from three years to two years. The application of the amended prescriptive period in defendant's case does not violate ex post facto prohibitions, because article 930.8 does not relate to an offense or its punishment. See State ex rel. Glover v. State, 93-2330, 94-2101, 94-2197 (La.9/5/95), 660 So.2d 1189, 1201.