812 So.2d 86 (2002)
STATE of Louisiana
v.
Albert PARKER.
No. 01-KA-0958.
Court of Appeal of Louisiana, Fifth Circuit.
February 13, 2002.
*87 Paul D. Connick, Jr., District Attorney, Mickey S. deLaup, Terry M. Boudreaux, Walter Amstutz, Frank Brindisi, Assistant District Attorneys, Gretna, LA, Attorneys for Appellee.
Frederick Kroenke, Baton Rouge, LA, Attorney for Appellant.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS and CLARENCE E. McMANUS.
MARION F. EDWARDS, Judge.
The defendant, Alfred Parker, appeals as excessive his sentence as a multiple offender. We affirm.
*88 Parker was charged with one count of armed robbery and four counts of second degree kidnapping, violations of LSA-R.S. 14:64 and 14:44.1, respectively. He was also charged with violating LSA-R.S. 14:95.1, felon in possession of a firearm, but this charge was ultimately dismissed. Following his plea of not guilty, Parker was tried by a twelve-person jury which found him guilty as charged on all counts.
Before sentencing Parker, the trial court denied his motions for new trial and arrest of judgment. The trial judge then sentenced Parker to fifty years of imprisonment at hard labor for armed robbery and ten years of imprisonment at hard labor on each of the four counts of second degree kidnapping. The sentences were ordered to run concurrently with each other. Parker filed a motion for appeal, which the trial judge granted. Parker's motion for appeal was premature when it was filed after conviction and sentence on the offense but before he was sentenced as a multiple offender. However, that procedural defect was cured by the subsequent resentencing.[1]
The State subsequently filed a multiple offender bill of information against Parker alleging him to be a fourth felony offender, which he denied. At the multiple offender hearing, the assistant district attorney determined not to use one of the listed predicate offenses and no evidence regarding that predicate was introduced. After the hearing, the trial judge found Parker to be a third felony offender, vacated the sentence on count two (second degree kidnapping) and sentenced him to life imprisonment without benefit of parole, probation, or suspension of sentence.
The facts of the case are as follows. On the evening of July 4, 2000, Nancy Adams and her three children, Taylor, Chase, and Jack, ages three, seven and five, were driving home from a gathering of her boyfriend's family in Kenner. En route to her home in Marrero, Ms. Adams changed her mind about driving across the river and decided to telephone her boyfriend to ask if she and the children could spend the night at his father's home in Kenner.
Ms. Adams stopped at a telephone booth near Dean's Deli at the corner of Airline Highway and Williams Boulevard. While she was on the phone with her boyfriend, a black man approached her. As this man, later identified as the Parker, reached the phone booth, he hung up the telephone and pressed an object, which Ms. Adams said felt like a gun, into her back. The man entered the passenger's side seat of her car and ordered her to drive into New Orleans. He initially told her that he wanted to go to the intersection of Tulane Avenue and Carrollton Avenue, but changed his mind after Ms. Adams reached that destination. The man told Ms. Adams that his sister lived nearby, and he instructed her to let him out further down on Tulane Avenue. Ms. Adams followed the man's instructions, but became very frightened when he told her to stop the car, because there were no people or houses in the surrounding vicinity. When she stopped the car, Parker raised his hand as if to strike her, but instead, he reached over and took her purse containing cash and sentimental jewelry before running away.
Shortly before the man told Ms. Adams to stop, seven-year-old Taylor woke up. Parker engaged Taylor in a conversation, in which he told Taylor that he had been in a fight with his girlfriend earlier in the *89 evening and needed a ride into New Orleans to his sister's house. Although Ms. Adams did not see a gun after the man entered the car, Taylor testified that she saw the man's gun while he was sitting in the front passenger's seat.
After the man fled, Ms. Adams returned to the home of her boyfriend's father where she called police. Detective Brian McGregor of the Kenner Police Department responded to the call. In the course of the investigation, Detective McGregor learned that a disturbance of the peace had been reported in Kenner near Dean's Deli earlier that evening. Detective McGregor discovered that Parker was the perpetrator in this incident. Bridgette Robinson, Parker's former girlfriend, testified at trial that she had called the police around 10:00 p.m. that night after the defendant refused to leave her home.
Detective McGregor also learned that Officer Glaser of the Kenner Police Department had responded to the disturbance call. Officer Glaser testified that he arrived at Ms. Robinson's home at 10:43 p.m. Parker was not there at the time, but Officer Glaser saw him walking along Airline Highway. The officer conducted a "field-interview" with him, and then drove away. At approximately 11:50 p.m., Officer Glaser saw Parker at the B & C Supermarket located at 1801 Williams Boulevard. As he drove past the supermarket, Officer Glaser instructed Parker, by means of his vehicle's speaker system, to stay away from Ms. Robinson's home. According to Officer Glaser, that supermarket was one block away from Dean's Deli.
Once Detective McGregor learned that Parker was the person involved in the disturbance incident, he compiled a photographic lineup containing the defendant's photograph. Both Ms. Adams and Taylor selected Parker's photograph from the lineup and both of them positively identified him as the perpetrator at trial.
The only error assigned by Parker is that his life sentence as a third felony offender is constitutionally excessive. The State responds that this mandatory minimum sentence is not excessive.
The Eighth Amendment of the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. The Louisiana Supreme Court has recognized that a mandatory minimum sentence under the Habitual Offender Law may still be reviewed for constitutional excessiveness.[2]
The court specifically held that when a trial court determines the minimum sentence mandated by LSA-R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," the trial judge must reduce the sentence to one that would not be constitutionally excessive.[3] However, the Louisiana Supreme Court has consistently reiterated that "a sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality."[4]
*90 In order to rebut the presumption of constitutionality, the defendant must clearly and convincingly show that he is "exceptional, which ... means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case."[5] However, "[a] sentencing court should exercise its authority to declare excessive a minimum sentence mandated by the Habitual Offender Statute only under rare circumstances."[6]
After the enhanced sentence was imposed, Parker objected to the sentence as excessive, but did not urge any specific basis for the court to deviate from the mandatory minimum. On appeal, Parker does not even contend he is exceptional within the meaning of Johnson. Rather, he urges in his brief that there must be more than his criminal background to justify the mandatory life sentence. He asserts the trial judge failed to give adequate considerations to the sentencing guidelines in LSA-C.Cr.P. art. 894.1. However, it was unnecessary for the trial judge to articulate reasons in sentencing the defendant because the sentence was mandatory under LSA-R.S. 15:529.1, as discussed infra.[7]
After reviewing the evidence of the defendant's predicate offenses presented at the habitual offender hearing, we find that Parker is not the type of "exceptional" individual contemplated by the jurisprudence. To the contrary, he seems to be the very type of recidivist individual for whom the Habitual Offender Law has been designed. The record reflects Parker has had a gradual progression toward violence. His crimes progressed from simple burglary to aggravated burglary to second degree kidnapping and armed robbery.
According to the Habitual Offender Law, if one of the predicate felonies or the underlying felony is a crime of violence as defined by LSA-R.S. 14:2(13), a life sentence of imprisonment without benefit of probation, parole or suspension of sentence is mandated. In the instant case, Parker's sentence of life imprisonment without benefit of parole, probation, or suspension of sentence is mandatory because the offense that the State sought to enhance, one count of second degree kidnapping, is defined a crime of violence.[8]
Parker has not made a showing of exceptional circumstances sufficient to justify a downward departure from the mandatory sentence of life imprisonment. The multiple offender law expresses clear legislative intent. Repeat offenders are to receive serious sentences.[9] Consequently, we find that the mandatory life sentence in this case is not excessive.

ERROR PATENT REVIEW
The record was reviewed for errors patent.[10]
*91 The record reflects that, at both the multiple offender sentencing and original sentencing, the trial court failed to completely advise Parker of the prescriptive period for filing post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8 in that he failed to indicate when the period began to run. Although the minute entries of both proceedings indicate that the trial judge accurately informed Parker of this time period, the transcripts do not. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails.[11] Accordingly, we remand the case to the district court and order it to inform the defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this Court's opinion and to file written proof that defendant received the notice in the record.
We note that the transcript and the commitment reflect that the trial judge failed to state that the armed robbery sentence was to be served without the benefit of parole, probation or suspension of sentence, as required by LSA-R.S. 14:64 B. Because Parker is serving an enhanced sentence on count two of life imprisonment without benefit or parole, probation or suspension of sentence concurrently with the remaining original sentences, that error is moot.
We further note that the trial judge failed to observe the mandatory twenty-four-hour delay between denying the motions for new trial and for postverdict judgment of acquittal or arrest of judgment, as required by LSA-C.Cr.P. art. 873. Parker did not waive this delay. As a general rule, when a defendant challenges a non-mandatory sentence, and the delay is not waived, the defendant's sentence should be vacated and the matter remanded for resentencing.[12] However, because the trial judge subsequently set aside the original sentence at the multiple offender proceeding, this sentencing error was harmless.[13]
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] State v. Page, 96-227 (La.App. 5 Cir. 8/28/96), 680 So.2d 104, 106, n. 2, writ denied, 96-2543 (La.9/19/97), 701 So.2d 153.
[2] State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676.
[3] State v. Dorthey, 623 So.2d at 1280.
[4] State v. Johnson, 709 So.2d at 676; See also, State v. Medious, 98-419 (La.App. 5 Cir. 11/25/98), 722 So.2d 1086, 1093, writ denied, 98-3201 (La.4/23/99), 742 So.2d 876.
[5] State v. Johnson, 709 So.2d at 676.
[6] State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339, 345.
[7] See State v. Smith, 99-1395 (La.App. 5 Cir. 4/25/00), 760 So.2d 506, 510-511, writ denied, 00-1604 (La.6/15/01), 793 So.2d 1233; State v. Haynes, 98-588 (La.App. 5 Cir. 2/23/99), 729 So.2d 104, 109.
[8] See LSA-R.S. 14:2(13)(r); LSA-R.S. 15:529.1(A)(1)(b)(ii).
[9] State v. Carter, 96-358 (La.App. 5 Cir. 11/26/96), 685 So.2d 346, 353.
[10] LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
[11] State v. Lynch, 441 So.2d 732, 734 (La. 1983); State v. Haynes, 96-84 (La.App. 5 Cir. 5/25/96), 676 So.2d 1120, 1123.
[12] See, State v. Augustine, 555 So.2d 1331 (La.1990); State v. Alexander, 98-993 (La. App. 5 Cir. 3/10/99), 734 So.2d 43, writ denied, 99-2138 (La.12/10/99), 751 So.2d 250.
[13] See State v. Brown, 95-124 (La.App. 5 Cir. 5/30/95), 656 So.2d 1070, 1077.